# GLORIA FERNANDEZ

*v.*

# RAMON VALDES.

San Juan, Law, No. 462.

PERSONAL INJURY.

1. When a railway is placed on a public highway, a greater degree of care must be exercised by the employees of the railway company and by the public than if said railway were not on the public road.
2. The railway company and the public using the highway have equal rights thereon.
3. The company must keep its trains under control by means of first-class appliances.
4. The railway trains must be operated with care, and so as not to frighten animals attached to vehicles on the highway, and must be stopped to prevent injury, if that is possible.
5. Unless the lack of brakes was the proximate cause of the injury, the lack thereof cannot be considered.
6. Actual damages only can be recovered for personal injuries not inflicted maliciously, including in this term the value of destroyed property, wounding and illness of plaintiff, fright, shock, doctor's bills, and other expenses.
7. Future suffering is not an element of damage unless plaintiff continues to suffer from the injuries received.
8. A franchise is a law binding on the parties exercising it and the public.

Case tried May 24, 1907.

*Messrs. Hartzell & Rodriguez Serra,* attorneys for plaintiff.

*Mr. T. D. Mott, Jr.,* attorney for defendant.

Fernandez v. Valdes.

Instructions by RODEY, Judge:

The facts sufficiently appear from the instructions.

RODEY, Judge, omitting the formal parts, gave the following charge and instructions to the jury:

This is a peculiar case, and one requiring your serious consideration. It seems that the franchise for the construction of this railroad or tramway from Cataño to Bayamon was obtained from the Spanish authorities here in Porto Rico by Mr. Valdes, many years ago. The instrument granting the concession is in evidence and is before you for your consideration. The evidence shows that this railroad or tramway is laid right along the main traveled road, or, at least, is so at the place where the accident occurred; and that, at this particular place, there is a swamp on each side of the combined railroad and wagon road, thus rendering it a very dangerous causeway, because of its extreme narrowness, made so by the necessary passing of teams and trains side by side without even the existence of a fence between them. The concession, it seems, provides certain speeds for the cars on this tramway or railroad, and certain brake power to enable the cars or trains to be stopped within specified distances when running at a certain specified speed; but, independent of all that, you are instructed that, as matter of law, when a railroad or tramway is laid along a main traveled road, as the evidence shows this to be, it imposes upon everybody using that road, including the railroad people, greater care than would be necessary were the tramway or railroad out in the open country, away from any road traveled over by the people. It seems, and you are instructed, that both the people and this tramway have exactly equal rights on this roadway,

and therefore you are instructed that each—that is, the people using the road, on the one part, and the defendant, on the other part—is bound to use extraordinary caution to see that no injury occurs. On the one hand, independent of any statute or concession, it is the duty of every person using that roadway along the railroad, and knowing that cars and locomotives are liable to pass, to use extra precautions for their own safety; and, on the other hand, it is the duty of the railroad to use extraordinary precautions to see that injury occurs to no one. And it is the duty of the owner of the railroad to provide his locomotives and cars with first-class brakes and means to stop the trains at short distances, no matter what the speed, and to keep continual lookouts along the line with a view to avoiding collisions and accidents, and to keep the train under such control as will enable it to be stopped at any time when an accident is imminent. A failure to do this will subject the defendant to the payment of damages for any injury that may occur, of which his negligence, as thus described, is the proximate cause. Therefore, if you believe, from a preponderance of the evidence, that the plaintiff was driving along that roadway with all due and proper care and diligence in managing her horse, and that the accident which has been described by the witnesses occurred because of the lack of proper brakes on the train, or because of the speed at which it was going, or because of the negligence of the operator of the locomotive or cars to keep a proper lookout or to apply the brakes, or because of any or all of these causes, you should find for the plaintiff, and assess the damages at such reasonable sum as you may believe, from the evidence, to be proper, within the limit sued for in the complaint, which is laid at $5,000, as damages to the plaintiff herself, and $500, for the loss of her horse and cart.

Fernandez v. Valdes.

You are instructed that, as matter of common duty, and independent of any statute or other law, it is the duty of every person running dangerous machinery, locomotives, or cars that are liable to frighten horses and live stock, to have and use in connection therewith, when running over places where they know they are liable to meet people and horses and carriages, all such proper appliances, brakes, etc., as will not expose the public to unusual risk, considering all the circumstances; and a failure to have or use such appliances, or to so properly conduct such dangerous machinery, will subject the owner thereof to damages for any injury that may result from such neglect.

You are further instructed that, in such a case as this, it was the duty of the operators of this train to have kept such a lookout as would enable them to see this young lady and her horse and cart in time to have stopped their train without doing her injury, provided there was anything in the actions of the horse at the time that the engineers first saw it, that would induce them to know, as reasonable men, that it was liable to run onto the track in front of the train; but, on the other hand, if you believe from the evidence that this particular locomotive was not running at undue speed, and that there was nothing in the actions of the horse to indicate that it was liable to shy or run onto the track, in front of the train, or that, when the horse began so to act as to convey such information to the persons running the train, it was so close to the horse as to render it impossible for the train to be stopped even if it had the best of brakes, then you are instructed that there is no liability and the plaintiff cannot recover, because it is in evidence that plaintiff knew that this was a dangerous piece of road, having traveled over it many times, and knew the risk she took when she drove her horse along there, and you should find for the defendant.

Fernandez v. Valdes.

You are further instructed that, unless you believe, from a preponderance of the evidence, that the lack of having proper brakes upon this train was the proximate cause of this accident, the lack of such brakes can cut no figure in the liability of the defendant.

You are further instructed that, if you find for the plaintiff, you can only find such damage as you, as reasonable men, believe, on the evidence, she has sustained for the market value of the horse, not its sentimental value to her, and the market value of the cart, and such damages as you may believe she is entitled to for being wounded, and the fright and shock and the consequent suffering, illness, doctor's bills, or other expenses, according to the evidence; but you cannot find any damages in her favor for future suffering unless you believe from the evidence that she is still suffering from the injuries received. In which event, you may, within the limits of the complaint, give her such damages in that regard as you think proper; and you are instructed that shock to the nervous system is an injury for which you may give damages just as well as though it was a physical injury, plainly apparent on the surface of the body, in such sum as the evidence may show you to be reasonable.

If you believe, from a preponderance of the evidence, that the train in question was not exceeding an ordinary rate of speed immediately previous to the accident, such as you believe would be a proper speed under all the circumstances, and that the locomotive was a sufficient distance away at the time the horse began to show signs of being frightened and exhibited an inclination to go to one side or the other of the road, then you are further instructed that it was the duty of the railroad people to be on the lookout to see such evidences of fright in the

Fernandez v. Valdes.

horse, and that it was their duty to have such brakes upon the train at the time as would have enabled them to stop it within such reasonable distance and avoid the accident; and if you believe, from a preponderance of the evidence, that, when the horse so began to exhibit signs of being frightened, the people in charge of the locomotive, through carelessness or otherwise, did not see it, or did not have such command of their train as to enable them to stop it, then the defendant is liable for all damage that has occurred, because this is a plain duty that devolves upon the defendant. In other words, if you believe, from a preponderance of the evidence, that the speed of this train was so great that, just because of the speed, it was likely of itself to scare this horse, when a reasonable speed would not, and that, because of this speed, the locomotive had approached the horse so closely before scaring him as that the train could not then be stopped in time to avoid the accident, then the defendant is liable for the accident and all injuries directly springing therefrom.

The franchise in question is a law, even though it may be subject to modification as between the parties to it; and in this regard you are instructed that, if the speed of this train amounted to a nuisance, by reason of being dangerous to the public, because of the surrounding conditions, then the neglect of the government to enforce its right to reduce the speed is no justification for running at an unreasonable or dangerous speed. The statute of limitations never runs in favor of the right to do a wrong or to maintain a nuisance.

Verdict for plaintiff for $1,250.